1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
8                   SOUTHERN DISTRICT OF CALIFORNIA
9

10  BARBARA YOUNG,                    )   Civil No. 04cv2491-L (WMc)
                                      )
        Plaintiff,                    )   **ORDER DENYING PLAINTIFF'S**
11                                    )   **MOTION FOR REVERSAL AND/OR**
    v.                                )   **REMAND, GRANTING**
12                                    )   **DEFENDANT'S MOTION FOR**
    JOANNE B. BARNHART, Commissioner  )   **SUMMARY JUDGMENT, AND**
13  of Social Security,               )   **AFFIRMING THE DECISION OF**
                                      )   **THE COMMISSIONER OF SOCIAL**
14        Defendant.                  )   **SECURITY TO DENY BENEFITS**
    _____ )
15

16        Plaintiff Barbara Young brought this action pursuant to 42 U.S.C. §§ 1383(c)(3) and

17  405(g) for Judicial Review and Remedy on Administrative Decision Under the Social Security

18  Act, requesting that the decision of the Commissioner of Social Security denying her disability

19  benefits be reversed.  Plaintiff filed a motion for reversal and/or remand, and Defendant filed a

20  cross-motion for summary judgment.  She maintains the Administrative Law Judge's finding

21  that Plaintiff did not suffer from a severe psychiatric impairment is not supported by substantial

22  evidence, that he improperly relied on the vocational expert's answer to an incomplete

23  hypothetical, and that he erroneously failed to resolve a conflict in the vocational expert's

24  testimony.  For the reasons which follow, Plaintiff's motion for reversal and/or remand judgment

25  is **DENIED**, Defendant's motion for summary judgment is **GRANTED**, and the

26  Commissioner's decision to deny benefits is **AFFIRMED**.

27  / / / / /

28

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff has tenth-grade education, and performed past work as a home care attendant. She stopped working on October 1, 1999, at the age of 43, because of pain in her lower back, arms, wrists, fingers, hips and legs, bilateral ankle pain and swelling, shortness of breath, headaches, and depression.

On June 13, 2000 Plaintiff initially applied for Supplemental Security Income Payments. Her application was denied, but she did not appeal the decision.  On March 26, 2001, she filed another application, which was denied initially and on reconsideration.  After an administrative hearing on August 15, 2002, the Administrative Law Judge ("ALJ") reopened the initial application at Plaintiff's request, and denied benefits to both  applications.  On November 12, 2004, the Appeals Council adopted the ALJ's findings.  She timely filed a complaint in this Court.


**DISCUSSION**

Plaintiff does not dispute any of the ALJ's findings with respect to her physical impairments.  She argues the finding her depression was not severe is not supported by substantial evidence because he gave too much weight to the opinion of Marc Capobianco, M.D. Plaintiff's examining psychiatrist. Based on this argument, she also maintains the ALJ failed to incorporate all of Plaintiff's mental limitations in his hypothetical questions to the vocational expert.  She further contends the ALJ failed to resolve a conflict in the vocational expert's testimony, which arose when the expert was asked about one of Plaintiff's mental limitations on cross-examination.

**I.      Standard of Review of Agency Decision**

The denial of benefits must be affirmed if the Commissioner's decision is supported by substantial evidence and applies the correct legal standards.  *Batson*, 359 F.3d at 1193. Substantial evidence means "more than mere scintilla but less than a preponderance." *Desrosiers v. Sec'y of HHS*, 846 F.2d 573, 575-76 (9th Cir. 1988) (internal quotation marks and citations omitted).  It is "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Ostenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Under this standard, the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, [the appellate court] must defer to the Commissioner's decision."  *Batson*, 359 F.3d at 1193 (internal citations omitted).

To qualify for disability benefits under the Social Security Act, Plaintiff has the burden to prove she is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least 12 months.  42 U.S.C. § 423(d).  The Social Security regulations establish a five-step sequential evaluation for determining whether a claimant is disabled under this standard.  20 C.F.R. § 404.1520(a); *Batson*, 359 F.3d at 1194.

First, the ALJ must determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  If not, the ALJ must determine at step two of the evaluation whether the claimant is suffering from a "severe" impairment within the meaning of the regulations.  *Id*. at § 404.1520(a)(4)(ii).  If the claimant's impairment is severe, the Commissioner must determine at step three whether the impairment meets or equals a "Listing of Impairments" contained in the regulations.  *Id*. at § 404.1520(a)(4)(iii).  If the claimant's impairment meets or equals a listing, she must be found disabled.  *Id*.  "However, if a decision as to whether a 'severe' impairment corresponds to a listed impairment cannot be made on medical factors alone, the ALJ must proceed to the final two steps in the sequential evaluation process."  *Batson*, 359 F.3d at 1194.

"At step four, the ALJ must consider the functional limitations imposed by the claimant's impairments and determine the claimant's residual functional capacity.  If the claimant retains the capacity to perform her past relevant work, defined as work the claimant has performed in the past fifteen years, *see* 20 C.F.R. § 404.1560(b)(1), the claimant is not disabled."  *Batson*, 359 F.3d at 1194 (citing 20 C.F.R. § 404.1520(f)).  If the claimant can no longer perform her past relevant work, the ALJ at step five must consider whether she can perform other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  "If the claimant can perform other work in

1  the national economy, then the claimant may not be found to be disabled." *Batson*, 359 F.3d at

2  1194 (citing 20 C.F.R. § 404.1520(a)(4)(v)).  While the claimant carries the burden of proving

3  eligibility at steps one through four, the burden at step five rests on the Commissioner.  *Id.*

4  **II.  Agency Decision**

5          The ALJ considered Plaintiff's physical and mental impairments, and found at step two of

6  the sequential evaluation that Plaintiff suffered from degenerative disc and joint disease,

7  lumbosacral spine, with longitudinal history of complaint and treatment for low back and leg

8  pain, and depressive disorder, all of which were medically determinable impairments.

9  (Administrative Record ("AR") at 28.)  He further found that all of the impairments in

10  combination were considered severe; however, the depressive disorder by itself was not severe.

11  (*Id.*)

12          At step three, he determined that Plaintiff's medically determinable impairments, alone or

13  in combination, did not meet or medically equal a Listing of Impairments.  (*Id.* at 29.)

14  Accordingly, he continued to make a finding regarding Plaintiff's residual functional capacity

15  ("RFC").  Based on his review of the record, he determined Plaintiff retained the RFC to

16  perform sedentary work with nonexertional limitations of only occasional climbing, balancing,

17  stooping, crouching, kneeling and crawling.  (*Id.* at 30.)  At step four, he determined Plaintiff

18  could no longer return to her past work as a home care attendant. (*Id.* at 34.)  At step five, he

19  concluded based on the vocational expert's testimony that Plaintiff can perform and sustain on a

20  regular and continuing basis the sedentary jobs such as assembler, product inspector, or taper

21  (printer circuit layout).  (*Id.* at 36.)  Since the numbers of these jobs were significant, he found

22  Plaintiff not disabled.  (*Id.*)

23          He made an alternative finding based on the assumption Plaintiff's depressive disorder

24  were severe so as to mentally limit her "to simple repetitive tasks with no close or frequent

25  interpersonal contact with supervisors, co-workers or the public."  (*Id.*)  If this were the case, he

26  concluded Plaintiff could nevertheless perform the jobs of assembler, product inspector, or taper

27  (printer circuit layout).  (*Id.*)

28  / / / / /

Plaintiff makes three arguments in an attempt to show the ALJ erred.  First, she maintains he erred in finding her depressive disorder nonsevere.  Second, she contends the vocational expert's opinion has no evidentiary weight because it does not take into account all of her mental limitations.  Last, she argues the ALJ failed to take into account the vocational expert's opinion that, assuming Plaintiff suffered from one to two episodes of decompensation, each of extended duration, it would be difficult for her to maintain a job.  These arguments are largely moot, since the ALJ determined in the alternative that he would find her nondisabled even if her depressive disorder were considered severe.  (AR at 36.)  Plaintiff's arguments are relevant only to the extent substantial evidence supports a finding of greater mental limitations than those assumed by the ALJ.[1]

## III.   Analysis

Plaintiff's mental condition was evaluated by three doctors.  Her treating physician, Jane Boyd, M.D. of Mid-City Community Clinic ("MCC"), Marc Capobianco, M.D., Plaintiff's examining psychiatrist, and David E. Gross, M.D., a nontreating, non-examining doctor. "[M]ore weight is given to a treating physician's opinion than to the opinion of a nontreating physician because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual.  Likewise, greater weight is accorded to the opinion of an examining physician than a non-examining physician.  Likewise, greater weight is accorded to the opinion of an examining physician than a non-examining physician" *Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (internal quotation marks and citations omitted).

Initially, Plaintiff contended the ALJ erred by giving more weight to Dr. Capobianco's opinions over Dr. Gross.'  However, she abandoned this argument.  In her reply she posited that "Drs. Capobianco and Boyd's opinions remain the only pertinent opinions regarding Plaintiff's psychiatric condition."  (Reply at 5.)  She argues the ALJ should have given more weight to the opinion of Dr. Boyd.

---

[1]   Harmless error rule applies on review of decisions by the Commissioner of Social Security.  *Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1990).  To the extent the ALJ may have erred at step two of the sequential evaluation in finding Plaintiff's depression nonsevere, the error was harmless for the reasons discussed below.

04cv2491

Dr. Boyd opined in April 2003 that Plaintiff was fully and permanently disabled. However, her opinion was based on Plaintiff's "intolerable" back pain, not her depression. (AR at 375). Plaintiff was treated at MCC for her physical condition. During treatment, she was diagnosed in December 2001 with depression due to her medical condition, and prescribed an antidepressant. (*Id*. at 365, 366.) However, depression is not mentioned in Dr. Boyd's disability opinion, which states in its entirety:

> The patient has intolerable low back pain which did not improve with injections. She saw Dr. Leung, a pain management specialist @ UCSD who recommended daily narcotics in addition to other pain medicines. Barbara is visibly uncomfortable at all of her visits to me and cannot sit or stand for over a few minutes at a time. I believe she is fully disabled, as well as permanently.

(*Id*. at 375.)   Accordingly, other than a diagnosis of depression due to Plaintiff's medical condition, as to which Dr. Capobianco agrees (*id*. at 301), Dr. Boyd's opinion does not support any specific findings regarding Plaintiff's mental functional limitations.

With respect to Plaintiff's mental impairment, the ALJ relied primarily on Dr. Capobianco. (*Id*. at 32.) On January 25, 2002, Dr. Capobianco prepared an Adult Psychiatric Evaluation. (*Id*. at 299.) Although he was not provided with Plaintiff's medical records to review, he is the only psychiatrist who examined Plaintiff for her complaints of depression. (*Id*.) Upon interviewing and briefly testing Plaintiff, he diagnosed her with depression, secondary to general medical condition, and assessed a Global Assessment of Functioning ("GAF") score of 65.[2] (*Id*. at 301.) A GAF score between 51 to 60 indicates moderate symptoms, such as flat affect and circumstantial speech, occasional panic attacks, or moderate difficulty in social, occupational, or school settings, and a score between 61 and 70 indicates mild symptoms or some difficulty in social, occupational, or school settings. Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32-34 (4th ed. 1994)). While Dr. Capobianco did not itemize Plaintiff's current level of functioning, he reported her test results and his observations during

---

[2] "Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient. The scale does not evaluate impairments caused by psychological or environmental factors." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999); *see also* 65 Fed. Reg. 50,746 at 50,764-65 (8/21/00) ("The GAF scale . . . is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association.").

04cv2491

the interview, none of which indicated the presence of severe depression.  (AR at 300-01.)  He concluded Plaintiff "is "being adequately treated for her depression.  Whatever limitations she possesses are most likely from a physical standpoint . . .."  (*Id.* at 302.)

Dr. Boyd's and Dr. Capobianco's opinions regarding Plaintiff's mental impairment do not contradict each other.[3]  Accordingly, Plaintiff's argument that the ALJ should have accorded more weight to Dr. Boyd's opinion is irrelevant to the finding that Plaintiff's depression was nonsevere and to his nondisability decision.

Even if Plaintiff had not abandoned her argument based on Dr. Gross' opinions, there would be no ground to reverse the ALJ's nondisability determination.  Dr. Gross reviewed Plaintiff's medical records, and on February 2, 2002 prepared a Psychiatric Review Technique form and a Mental Functional Capacity Assessment form for the Social Security Administration.  (*Id.* at 306, 320.)  He evaluated Plaintiff under Listing of Impairment no. 12.04, Affective Disorders.  (*Id.* at 309.)  He opined Plaintiff suffered from a "[d]isturbance of mood, accompanied by a full or partial manic or depressive syndrome," and that "[a] medically determinable impairment is present that does not precisely satisfy the diagnostic criteria . . .."  (*Id.*)  He rated Plaintiff's functional limitations as moderate in terms of restriction of activities of daily living, difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence or pace, and checked one or two episodes of decompensation, each of extended duration.  (*Id.* at 316.)  In the assessment of Plaintiff's mental RFC, he opined Plaintiff was moderately limited in most of the categories, and was otherwise not significantly limited.  (*Id.* at 320-21.)  Most notably, he opined she was at most moderately limited in her ability to maintain regular attendance; complete a normal workday and workweek without interruptions from psychologically based symptoms; interact appropriately with the general public; accept

---

[3]      The ALJ gave less weight to Dr. Boyd's opinions than other treating and examining physicians.  (AR at 30-32.)  However, this is relevant primarily to evidence of Plaintiff's physical impairments.  With respect to Dr. Boyd's opinion of disability, the ALJ noted it was inconsistent with Dr. Capobianco's opinion that Plaintiff had no work related psychiatric limitations.  (*Id.* at 31.)  As discussed above, rather than finding the opinions inconsistent, the Court concludes Dr. Boyd's disability opinion was not based on Plaintiff's mental impairments.

04cv2491

instructions and respond appropriately to criticism from supervisors; get along with coworkers; and maintain socially appropriate behavior." (*Id.*)  He summed up that Plaintiff's "understanding and memory are compatible with remembering short and simple instructions;" "concentration and attention should be adequate for simple repetitive tasks for a full workday and full workweek;" "social interaction capacity should be adequate for dealing with peers and supervisors, but not with the public;" and "adaptation capacity should be intact for the usual work setting."  (*Id.* at 322.)

For purposes of his alternative finding, the ALJ assumed Plaintiff were "mentally limited to simple repetitive tasks with no close or frequent interpersonal contact with supervisors, co-workers or the public."  (AR at 36.)  These assumptions are more limiting than Dr. Gross' opinion of Plaintiff's mental RFC.  At the hearing, the ALJ posed hypothetical questions to the vocational expert, which took into account the limitations he assumed.  (*Id.* at 105-07.)  The vocational expert opined Plaintiff could nevertheless perform sedentary jobs such as assembler, production inspector and taper of printed circuit layouts.  (*Id.*)

Plaintiff seizes on a hypothetical question posed by her counsel on vocational expert's cross-examination, whether a person who had one or two episodes of decompensation resulting in an inability to function socially for an extended period of time, *i.e.*, an inability for greater than a two week period, once or twice in a year, could sustain or maintain gainful employment.  (*Id.* at 112-13.)  The vocational expert opined that it would be difficult for such person to maintain employment with a single employer.  (*Id.*)  The ALJ did not include this limitation either in his hypothetical question to the vocational expert or in the assumptions for his alternative finding.

"If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the 'expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'"  *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).  However, the ALJ does not have to include in his hypothetical questions limitations which are not supported by the record. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  The only record mentioning periods

of decompensation resulting in an inability to function socially for an extended period of time is Dr. Gross' report.  However, Dr. Gross did not examine Plaintiff.  Furthermore, Plaintiff's medical records reviewed by Dr. Gross do not show Plaintiff suffered any episodes of decompensation resulting in an inability to function socially for an extended period of time. Plaintiff did not testify to it at the hearing  (*see* AR at 4-64), and, other than Dr. Gross' report, she offers no citation to evidence supporting this limitation in her motion papers.  Accordingly, Plaintiff's argument that the vocational expert's testimony is without evidentiary weight due to the ALJ's failure to include periods of decompensation in his hypothetical question is without merit.

Also without merit is Plaintiff's argument that the ALJ erred in resolving the conflict in the vocational expert's testimony with respect to Plaintiff's periods of decompensation.  The ALJ reviewed medical records, and provided a detailed evaluation of medical sources in his decision.  He explained he gave more weight to Dr. Capobianco's opinions than Dr. Gross' because Dr. Capobianco examined Plaintiff, while Dr. Gross did not.  (AR at 32.)  As discussed above, the record does not support Dr. Gross' opinion with respect to periods of decompensation.  Accordingly, there was no conflict in the vocational expert's testimony for the ALJ to resolve.

Last, Plaintiff argues the ALJ's alternative nondisability finding was based on a false premise because "[t]here are a myriad of psychiatric limitations that could prevent Plaintiff from performing alternate work." (Reply at 7.)  There is no support in the medical records for the "myriad of psychiatric conditions."  In support of this argument, Plaintiff cites only to her own testimony regarding her lack of concentration, lack of memory, and inability to sustain tasks. These complaints are not supported by medical records.  Furthermore, the ALJ found Plaintiff's allegations of disabling functional limitations not fully credible.  (AR at 32.)

The ALJ may engage in a credibility analysis to determine whether to credit the testimony regarding severity of the symptoms, and may reject the claimant's testimony

> only if he makes specific findings stating clear and convincing reasons for doing so.  ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.  [¶]  To determine whether the

claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also id*. at 1281-82.  For his credibility finding, the ALJ enumerated nineteen reasons supported by citations to the record, and his finding is supported by substantial evidence.  (AR at 32-34.)

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for reversal and/or remand is **DENIED**. Defendant's motion for summary judgment is **GRANTED**.  The Commissioner's decision to deny benefits is **AFFIRMED**.

**IT IS SO ORDERED**.

DATED:  September 27, 2006

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. WILLIAM McCURINE
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

04cv2491